UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | CASE NO. 5:21-cr-00031 |
| MICHAEL R. GUZMAN, | § § § § | |
| *Defendant.* | § | |

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW, MICHAEL R. GUZMAN, Defendant, by and through his attorneys of record, Nick Oberheiden and Elizabeth K. Stepp, and hereby submits this memorandum to aid the Court with imposing a sentence in his case that is "sufficient, but not greater than necessary" to achieve the statutory sentencing purposes of 18 U.S.C. § 3553. Mr. Guzman respectfully suggests that a variance below the guideline sentencing range is reasonable and appropriate in this case.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On May 10, 2021, Mr. Guzman was named in a two-count Bill of Information charging him with violating 18 U.S.C. §1343 (wire fraud) and 18 U.S.C. §1957(a) and (b)(1) (money laundering). On May 20, 2021, Mr. Guzman pled guilty to both counts pursuant to a Rule 11(c)(1)(B) written plea agreement before Magistrate Judge David S. Cayer and was released on a $25000 unsecured bond with Pretrial Services

Supervision. On June 30, 021, the Probation Officer filed the PSR for this case, to which neither the government nor the Defendant lodged any objections.

## II. LEGAL STANDARD

Under *United States v Booker*, while this Court must consider the sentencing guidelines, those guidelines are "merely one sentencing factor among many, and the calculated guideline range must be considered in conjunction with the other section 3553(a) factors." 543 U.S. 220 (2005). The guidelines do not have "quasi-mandatory status." *United States v. Reinhart*, 442 F.3d 857, 864 (5th Cir. 2006).

Courts may choose to grant a variance in a sentence based on the application of the factors contained in 18 U.S.C. § 3553(a), which requires a "sentence sufficient, but not greater than necessary" to meet the goals of the statute. Those factors include consideration of the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant;

    (D) to provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established . . . ;

(5) any pertinent policy statement . . . ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### III. THIS CASE WARRANTS A VARIANCE

A review of the § 3553(a) factors demonstrates that a variance to sentence Mr. Guzman below the guideline range is appropriate. As discussed below, only three of the listed factors are relevant to this case and all three support a downward variance: 1) Mr. Guzman's personal history and characteristics, 2) the nature and circumstances of the offense, and 3) the need for the sentence imposed. These factors show that the guideline range of 51-63 months is "greater than necessary" to achieve the goals of sentencing, including the goals of deterrence and punishment. And the remaining § 3553 factors – need for restitution, types of sentences available, sentencing range established, policy statements, and avoidance of sentencing disparities – do not change this conclusion.

**1. History and Characteristics of Michael R. Guzman**

Mr. Guzman was born in 1978 to parents who separated eight years later and finalized their divorce in 1988. The divorce is described by Mr. Guzman as tumultuous, including both emotional abuse and refusal to pay child support by Mr. Guzman's father, and the police were involved on more than one occasion. Mr. Guzman now has no relationship with his father or paternal relatives. After the divorce, he was raised by his mother and grandparents, and says that "[d]espite the indelible scar caused by my father's abandonment, the good Lord blessed me with an amazing, loving and beautiful upbringing." Mr. Guzman married his wife and, Jessica Guzman, in 2005, and they have two children: Sarah, age 23, and Michael, age 19.

Jessica and Michael first met at a Kentucky Fried Chicken where they both worked as teenagers and have been together ever since.

Mr. Guzman enrolled in community college after high school and worked as a delivery driver while attending classes. After the birth of his daughter, Mr. Guzman, together with Jessica, committed to giving her a stable and happy upbringing. He transferred to St. John Fisher College and continued to work as a delivery driver until receiving his finance degree in 2001. He wanted to work for Bank of America and moved his young family to Charlotte to accomplish that dream, where their second son was born. Over the years, Mr. Guzman worked hard and even went back to school to earn his MBA from Wake Forest in 2006.

For many years, everything was going well in Mr. Guzman's life. His family was happy, he continued to work his way up the corporate ladder at various companies, and he had time to attend his children's sports and other events, even serving as an assistant soccer coach for three years. Eventually, Mr. Guzman went to work for Sunbelt, where he traveled two weeks per month and continued to work long hours while steering away from the party culture and heavy drinking associated with the industry.

In 2016, Sunbelt promoted Mr. Guzman to a position with less travel and more pay, supervising eight reports and requiring approximately 65 hours per week. While he was thankful, the new job was increasingly stressful and eventually took a mental toll on his health. He started drinking heavily again and was prescribed Zoloft for

panic attacks. After that, his job performance suffered, and he ultimately made the unthinkable choice to commit the acts discussed above.

As shown by his letter to the Court, Mr. Guzman is immensely remorseful for his actions and the harm he has caused to his family, Sunbelt, himself, and, as he says, the "victim of American citizens." He has stopped drinking and is attending therapy and working hard not only to repay the harm he has caused, but also to repair his own internal issues that led to his poor decision-making.

Letters in support of Mr. Guzman are attached as Exhibit A to this memorandum. These letters attesting to Mr. Guzman's character come not only from his family members and personal friends but also from his therapist and other community members. The letters also include a testimonial and letter of gratitude from Prison Professors, a non-profit organization with whom Mr. Guzman has been and will be working to develop coursework to assist prisoners with their integration back into society. No matter the letter-writer's relationship with Mr. Guzman, the phrases they use to describe his character paint a vivid picture of type of person he is:

- "He has aided me time and again and even opened his home when I was struggling in a new career."

- "This is an anomaly in an otherwise commendable life."

- "If you knew him, you'd find that he is a kind-hearted, family oriented, smart, funny guy whose friends and family love and enjoy spending time with him very much."

- "Mike is the guy who would literally give you the shirt off his back if you needed it more than him – he'd help you move – he'd answer the phone at midnight if you needed a ride or ran out of gas."

- "Michael is extremely remorseful…and wants to be able to atone for any offense."

## 2. Nature and Circumstances of the Offense

Mr. Guzman immediately pled guilty to all the conduct with which he was charged and has been fully cooperative with pretrial services, abiding by all conditions of his release. Mr. Guzman accepts full responsibility for the decisions he made that led him to this point and deeply regrets his choice to commit these acts against his former employer.

As shown in the letter he wrote to this Court that is incorporated into the PSIR, Mr. Guzman began drinking heavily for the second time in his life two years after receiving a promotion at Sunbelt. The promotion came with increased stress and responsibility that he wasn't handling well, contributing to heavy drinking and panic attacks. After receiving a negative review including a reduced bonus in 2019, Mr. Guzman took out his anger at his employer childishly and made a terrible and regretful decision to seek revenge against Sunbelt by setting up a shell corporation to siphon the corporation's money and property for himself. At the time, the stress of his job and his relapse into heavy drinking allowed him to justify his actions to himself and fool himself into believing that he could pay the money back if he were ever discovered. It was not until he was fired, subjected to a civil suit, contributed to his son's drinking and driving offense, and confronted by his wife that Mr. Guzman hit rock bottom and finally realized the enormity of what he had done. When he met with federal agents, he describes a feeling of relief by telling the truth and taking full responsibility for his actions.

### 3. Need for the Sentence Imposed

The guidelines range adopted in the PSR is 41-51 months of incarceration. But a sentence of three and a half years or more is not necessary to punish Mr. Guzman, to promote respect for the law, or to afford adequate deterrence. Mr. Guzman has no previous criminal history, and he has cooperated with the government and the orders of this Court in every way possible. Other than one charge of driving while intoxicated when he was 19 years old, Mr. Guzman has never previously disrespected the law, and he has no intention of ever doing so again. As for punishment, in addition to this criminal case, Mr. Guzman owes Sunbelt $4.1 million in restitution, lost his job and house, and is now fighting to save his marriage and family – all as a result of his actions in this case. On top of these losses, probation, home confinement, or a minimal sentence would be sufficiently punitive in this case. Moreover, Mr. Guzman is certainly deterred from further criminal, or even questionable, activity with respect to any future employment, and other individuals will likely be deterred from similar behavior by the mere fact that this case was prosecuted, and that Mr. Guzman pled guilty.

### 4. Remaining Factors

Mr. Guzman will owe restitution in this case in an amount of $4.1 million. That restitution requirement will be unaffected by any custodial sentence, though, other than the obvious consideration that his ability to earn money to pay the restitution to Sunbelt will be delayed during any period in which she is incarcerated.

Sentencing disparities are not a consideration in this case, because Mr. Guzman is the sole defendant. The underlying statutes do not impose a minimum sentence, although they do impose a maximum sentence of ten and twenty years respectively. Nor do the statutes in question otherwise limit the type of sentence this Court may impose; while the sentencing guidelines suggest that Mr. Guzman would be ineligible for probation, the statutes both provide that probation of one to five years per count may be imposed. Finally, Mr. Guzman is unaware of any policy statements that would bear upon this Court's determination of a sufficient sentence in this case.

## IV.     CONCLUSION

Mr. Guzman respectfully asks this Court to evaluate his sentence not only in the confines of the PSR and court filings but in the context of his life as reflected herein and in the character reference letters being provided to the court. A prison sentence of 51-63 months is simply greater than necessary and does not account for all of the factors to be considered by this Court in determining a fair sentence. For the foregoing reasons, Mr. Guzman respectfully submits that a sentence below the guideline range is reasonable and appropriate in this case.

DATED: August 19, 2021

Respectfully submitted,

*/s/ Nick Oberheiden*
Nick Oberheiden
NY Reg. No. 4619011
nick@federal-lawyer.com
**OBERHEIDEN, P.C.**
440 Louisiana St., Ste 200
Houston, Texas 77002
(310) 873-8140 (Telephone)
(972) 559-3365 (Facsimile)

Terry C. Frank
Terry Frank Law
108 E. Grace Street Ste. 1
Richmond, VA 23219
terry@terryfranklaw.com
Telephone: 804-899-8090
Facsimile 804-899-8229
ATTORNEYS FOR DEFENDANT
MICHAEL R. GUZMAN

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2021, a true and correct copy of the above and foregoing instrument was served electronically on all counsel of record via ECF.

/s/ Nick Oberheiden
Nick Oberheiden

# EXHIBIT A



August 17, 2021

The Honorable Kenneth D. Bell

                                        Re: Michael Guzman
                                              DOB 04/27/1978

Dear Judge Bell:

My name is Donna M. Maisano and I am a Licensed Independent Social Worker at Life Stance Health in Myrtle Beach, SC, and writing to you on behalf of my client Michael Guzman. I have been providing weekly therapy sessions to Michael since September 2, 2020.

I am respectfully writing this letter to you in the hope that you will be able to consider leniency to Michael and to provide my insight as to the remorse and growth he has made during the time I have been working with him. Michael has been seeing me since 9/02/2020 and came with General Anxiety Disorder and Alcohol Abuse. He was depressed and confused about why he spiraled out of control and relapsed with alcohol after 9 years and a very successful career. I was able to identify some unresolved issues he was struggling with trying to overachieve and overcompensate for the abandonment of his father, which was triggered by feelings of low self esteem and resentment. He became depressed, relapsed with alcohol and his judgment became impaired.

Over the course of this year I truly believe that Michael is extremely remorseful for the actions that he had taken during that time. He has been able to identify some of the distorted cognitions he had and wants to be able to atone for any offense that he may have made to others. He has worked on himself in order to move forward once again as a compassionate, responsible law abiding citizen. I hope that he will be afforded every opportunity to continue to work on his sobriety and am confident that once he returns to his family he will give back to society in some meaningful way.

Thank you for your consideration. Should you require any additional information please contact me at (631) 553-0122.

Sincerely,

Donna M. Maisano, LISW-CP

Michael Bateman
192 Huffer Rd.
Hilton, NY 14468
585.402.0226
Michael.Bateman80@gmail.com

To the Honorable Judge Kenneth D. Bell:

My name is Michael Bateman and I am writing this letter on behalf of my brother in law Michael Guzman.

I have known Mike for twenty-one of my forty years, and have always held him in the highest regard. When he informed me of the charges and subsequent guilty plea I was very much shocked as these actions were completely out of character. I respect that Mike has pled guilty to a serious crime, and am writing this letter to present a more comprehensive depiction of the person that I have known for more than half of my life.

I met Mike shortly after he began dating my sister Jessica in 1995. Three years later at the age of twenty their daughter Sarah was born and from that moment on Mike dedicated every ounce of energy to his family, and worked tirelessly to create the best life possible for them. This entailed maintaining a full-time job and a full-time college schedule all while successfully managing a home and raising a child. His true character became clear. This was obviously someone whose primary objective was to better himself and those he was responsible for. Following his graduation Mike and Jessica relocated to Charlotte, NC in 2001 where their family grew to include their son Michael. While in North Carolina he continued to demonstrate his commitment to the betterment of himself and his family and modelled important principles such as education, hard work, and family time. He successfully completed his MBA at Wake Forest, elevated his career, and always made sure to be a fully present and engaged father. His goal was always to create an ideal home-life for his children and to provide them with the opportunities necessary to become responsible, productive adults. He certainly succeeded.

Mike's work ethic, devotion, and selflessness has paid enormous dividends. He and my sister have been happily married for over sixteen years, his eldest daughter is a recent Appalachian State graduate and public servant, and his son Michael is currently a student at North Carolina State University. He has aided me time and again and even opened his home when I was struggling in a new career. He has long been an upstanding, productive, contributing member of society, and I am certain he will be again. While I am disappointed by his transgressions I am confident that he fully appreciates their significance. This is truly an anomaly in an otherwise commendable life.

Sincerely,

Michael Bateman

The Honorable Judge Kenneth Bell
7200 Charles R. Jonas Federal Bldg.
401 West Trade Street
Charlotte, NC 28202

Dear Honorable Judge Kenneth Bell,

I am writing to you about the character of Mr. Michael Guzman.

I came to know Mike after working with and being close friends with his wife, Jessica for many years. Before meeting Mike in person, I'd only heard about him through Jessica. She'd tell me about their family Sunday Fundays, their family game nights, about Mike and their son competing in annual charity races together and how he could make a killer rib roast.

Now that I've gotten to know Mike, I can personally add with total confidence that he is a genuinely good person. If you knew him, you'd find that he is a kind-hearted, family oriented, smart, funny guy whose friends and family love and enjoy spending time with very much.

He and Jess have raised 2 exceptional children which is direct reflection on them. Their daughter, Sarah, buckled down and finished college in 3 years and now works to house the homeless. Their son, Michael, speaks fluent Mandarin already and is in his second year at NC State, working hard and making the Dean's List throughout his first year. They both have an exceptional work ethic and maturity that is rare in our young adults these days.

Mike is the guy who would 'literally' give you the shirt off his back if you needed it more than him - he'd help you move - he'd answer the phone at midnight if you needed a ride or ran out of gas - he is a kind, compassionate, good, good guy, husband, father, and friend who I am proud to know.

Please feel free to contact me with any questions.

Sincerely,

Teresa Webb
Senior VP of Sales ~ Sactacular Holdings, LLC
(919) 819 - 4613
teresa.webb@sactacular.com



May 9, 2021

Mike Guzman
7954 Baypointe Drive
Denver, NC 28037

Dear Mr. Guzman:

On behalf of our team at the Prison Professors Charitable Corporation, please accept this letter of gratitude for your contribution for the scores of hours you've spent volunteering with us.

Use the following link to access online version of the course you helped us create:

- [How People in Prison can Prepare for Successful Careers](#)
- Through our program, more than 100,000 people in jails and prison will have access to your course.

We understand that you're facing the possibility of imprisonment.

We're thrilled to learn of your commitment to continue contributing to our program, and we hope that you'll be able to work with us while you're serving the sentence. We're very grateful for your continuing support of time and energy. Your contributions strengthen our message on the importance of working to reconcile with society.

To confirm, we're an IRS approved 501c3 with the following identification number:

» Prison Professors Charitable Corporation
» IRS Number: 85-2603315
» https://businesssearch.sos.ca.gov/CBS/Detail

Since 2009, our team has worked to build safer communities. We create programs to teach and inspire people in prison, at-risk youth, and we open employment opportunities for formerly incarcerated people. We consider your background as a job creator as being enormously valuable to our mission, and we thank you for the time you devoted to help us develop a self-directed learning course for people in jail and prison.

Administrators in jails and prisons have tasked us with creating new coursework specifically for people in jails and prisons. Those people have a particularly difficult time finding employment in this COVID environment. Our entire society benefits when leaders like you provide guidance in job training.

We appreciate your offer to continue helping us to develop coursework that we can distribute to jails and prisons across America. As we discussed, in addition to creating new digital coursework, we need assistance with:

- » Strategy review & tactical project implementations
- » Identifying & implementing projects central to increasing the Foundation's reach to people in need
- » Publishing educational video into new platform for use in jails and prisons

During the COVID era, people in prison are more in need than ever of the self-directed digital content we provide. As long as you remain free, please continue with the work that you've been doing to help us develop and distribute content.

To confirm what we've discussed during our conversations, the following agencies use our digital learning programs:

- » Every state prison in the state of California
- » United States Penitentiary, Atwater, CA
- » Federal Correctional Institution, Victorville, CA
- » United States Penitentiary, Florence, CO
- » Federal Holding Center, Mecklenburg County Jail
- » Edovo Tablets

The following links will show testimonials we've received from law enforcement officers, or people that administer programs in jails and prison. Those PDF links show how we're working to improve outcomes of America's prison system. We could not make this impact on society without your contributions:

- Federal Bureau of Prisons
- California Department of Corrections
- Washington State Department of Corrections
- Edovo Tablets that Publish our Content

We are desperately in need of leadership like you can provide. We need guidance to scale our program, and we're hopeful that you will be able to assist us.

When the time comes for you to interact with a probation officer, please show the contributions you've helped us create on our YouTube channel through this link. We create new digital content every day. Some of the specific projects we could use assistance with, in addition to the work you've already completed, includes:



**Prison Professors Charitable Corporation / 501c3 / IRS #: 85-2603315**
**32565 Golden Lantern Street, B-1026 / Dana Point, CA 92629**

- » Helping us develop best practices.
- » Developing new coursework to teach more people from vulnerable populations, especially young men and women.
- » Generating more financial resources that we can use to both create content, and to open employment opportunities for formerly incarcerated people.
- » Identifying formerly incarcerated people we can interview and profile through our video and audio coursework.
- » Contributing to our Customer Relationship Management system that we can use to interact with law enforcement professionals.
- » Helping to coordinate regular mailing to jail and prison administrators.
- » Identifying potential employers that will participate with our educational programming.
- » Content management for the coursework we create.

We will be grateful for any amount of time that you can devote to this project. While serving your sanction, we will benefit from your continued writing and leadership.

As soon as you have clarity with regard to your availability, please let us know. We will begin assigning tasks and measuring hours. To complete these tasks, you will work remotely, so you will need access to a telephone and a computer with Internet connectivity.

Again, I'm writing to thank you for the time you've donated to the Prison Professors Charitable Corporation.

We appreciate the generous contributions of time that you've made so far, and we look forward to you joining us as a fulltime team member at the soonest possibility.

Sincerely,

*Michael Santos*

Michael Santos,
Michael@PrisonProfessors.com
Director, Prison Professors Charitable Corporation
Cell: 415-419-1728



**Prison Professors Charitable Corporation / 501c3 / IRS #: 85-2603315**
**32565 Golden Lantern Street, B-1026 / Dana Point, CA 92629**

Case 5:21-cv-00031-JGB-DTB  Document 32  Filed 02/23/21  Page 16 of 19



215 W. Superior St., Suite #600
Chicago, IL 60654
312.757.5533

09/13/20

To whom it may concern,

We at Edovo would like to extend our sincerest gratitude to Michael Santos for the invaluable content he has provided to the incarcerated learners utilizing our educational platform. Since publishing two of his courses -- "Straight-A Guide" and "Mastermind", over 50,000 incarcerated men and women have had the opportunity to benefit from his teachings. His collaboration and expertise have had an immense impact, inspiring thousands to find a better path for themselves.

We are eager to expand our partnership with Michael Santos as we focus on continuing to provide free educational, vocational, and rehabilitative content to the incarcerated throughout the USA. It is because of committed partners like Mr.Santos, that together, we are able to successfully help so many rehabilitate back into society.

Sincerely,

John Timpone
**Senior Product Manager**



**U.S. Department of Justice**

Federal Bureau of Prisons

United States Penitentiary

#1 Federal Way, Castle Airport
Atwater, CA 95301

My name is Andre Matevousian and I serve as Warden of the United States Penitentiary in Atwater, California. I write this letter as a testimonial for Michael Santos.

I was in the audience when Mr. Santos made a luncheon keynote presentation at a symposium sponsored by the Ninth Circuit Court of Appeals in Sacramento. More than 300 people were in the audience made up of federal and state judges, prison wardens, and others associated with corrections. Mr. Santos spoke about his experience of serving 26 years in prison, and the relationship between a person's adjustment in prison and his prospects for success as a law-abiding, contributing citizen upon release.

After listening to Mr. Santos's presentation, I invited him to visit USP Atwater to make a presentation for the Executive Staff at our institution. He then addressed approximately 150 high-security prisoners, sharing his story and inspiring them to pursue values-based, goal-oriented adjustment patterns. By avoiding disciplinary infractions and participating in positive programming, Mr. Santos assured the men that they would advance opportunities for success in prison and beyond. His message resonated with the men. They found him authentic by virtue of the time he served and the success he experienced upon release.

We purchased the Earning Freedom Mastermind Course, a program he designed to teach values-based, goal-oriented adjustment strategies for people in prison. Out of 75 people that signed up for the initial class, 70 people earned graduate certificates. He continues to support the program by visiting our institution when appropriate.

Since working with Mr. Santos, I have been in contact with other law enforcement officers about his work, including US Attorneys and other federal prison wardens. I endorse his efforts to contribute to the building of safer prisons and safer communities.

Sincerely,

Andre Matevousian
Warden, USP Atwater

 

12/10/2014
Ortiz, Hector R. (DOC)
Washington State Department of Corrections
191 Constantine Way Bldg: U MS: WA-39
Aberdeen, WA 985250

Michael Santos
P.O. Box 261908
Los Angeles, CA 91426

Dear Mr. Santos

I'm writing on behalf of the students that are currently participating in the initial class of the "Straight-A Guide" at Stafford Creek Corrections Center. We are scheduled to complete the program on December 31st 2015.

The class has expressed a strong desire to formally invite you to the graduation ceremony that will be taking place at the facility on January 15th 2015. Most of the current participants were present when you visited the site in January of 2014 and feel it is important that you witness the first cycle of what you envisioned as well as provide an opportunity for them to personally thank you for the profound effect that the program has had in their lives.

We would be honored by your presence and would love to share some of the realizations that we have come to by participating in this program.

Sincerely,

*[signature]*
Ortiz, Hector R. (DOC)
Offender Workforce Development Specialist

*[multiple signatures of class participants]*